### BLUMENTHAL v. COMMISSIONER OF INTERNAL REVENUE.

No. 10080.

United States Court of Appeals
Third Circuit.

Argued Feb. 7, 1950.

Decided June 27, 1950.

Herbert W. Reisner, Philadelphia, Pa. (Sanford D. Beecher, Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for petitioner.

MaryHelen Wigle, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott, Special Assistants to the Attorney General, on the brief), for respondent.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The issue presented by this petition for review of the decision of the Tax Court is whether premiums paid by the taxpayer on insurance policies on his own life for the irrevocable benefit of his divorced wife are deductible from gross income under Section 23(u) of the Internal Revenue Code, 26 U.S.C.A. § 23(u). This section of the Code permits a husband to deduct from gross income amounts includible under Section 22(k), 26 U.S.C.A. § 22(k), in the gross

income of his wife, payment of which is made in the husband's taxable year. Section 22(k) is set out in pertinent part in the margin.[1]

The facts as found by the Tax Court[2] may be stated as follows:

The taxpayer and his wife, Sara, entered into a written agreement of separation on February 14, 1936, Sara having begun divorce proceedings in New York prior thereto. The agreement provided, *inter alia,* for the payment of $100 per week to Sara for her support and maintenance until her death or lawful remarriage. The ninth paragraph of the agreement provided that "For the purpose of securing to the wife during the lifetime of the husband of the weekly sums hereinabove provided * * *" the taxpayer would assign certain salaries, dividends and bonuses which might become due to him. The tenth paragraph of the agreement provided that "For the purpose of further securing and protecting the wife in the payments to be made to her for her sole support, as herein provided, in the event of the death of the husband, and in consideration of her waiving all right and interest under and pursuant to the decedent estate law of the State of New York, and/or the State of Pennsylvania, or otherwise, in the property, real and personal, of which the husband may die seized or possessed * * *", the taxpayer would, in effect, cause his wife to be made irrevocable beneficiary of certain of the taxpayer's life insurance policies for her life or until her remarriage, in order to provide payment by the insurance companies of income or principal not exceeding $5200 per annum until her death or remarriage, in which event the principal or income would be distributed in such manner as the taxpayer should direct. The taxpayer agreed to maintain the premiums on the

1. "Alimony, etc., Income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce * * * periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon

or incurred by such husband under such decree or under a written instrument incident to such divorce * * * shall be includible in the gross income of such wife * * *." As added by Section 120(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798.

2. Findings of Fact and Opinion of the Tax Court are reported at 13 T.C. 28.

policies and to execute and deliver in escrow necessary papers which would permit his wife to obtain loans on the policies solely for the purpose of paying overdue premiums. The policies were to be delivered to a trust company as custodian, to be held for the purposes set forth in the agreement.

On May 4, 1936, the taxpayer's wife was granted a divorce. The decree [3] adopted substantially the provisions of the written agreement of February 14, 1936. It may also be noted that in paragraph 15 of the written agreement, the parties released and discharged each other "from all claims and causes of action which they have had or have other than payments and causes of action" provided for in the agreement, and that this provision was not affected by the judicial decree.

There is no dispute that the taxpayer incurred an obligation because of the marital or family relationship, that it was written and incident to the divorce, and that, insofar as we are here concerned, the obligation was further imposed upon him by the divorce decree. The Commissioner therefore allowed the taxpayer a deduction for the taxable year involved, 1945, in the amount of $5200, representing the weekly payments of $100 to his former wife required by the writing and the decree. But he disallowed a deduction in the amount of $2,244.63 which represented insurance premiums paid by the taxpayer under the conditions of the writing and the decree. The Tax Court agreed with the Commissioner, one judge dissenting.[4]

The taxpayer contends that the amount paid as premiums on the life insurance policies are includible in the gross income of his former wife under Section 22(k) of the Code, and hence are deductible from his gross income under Section 23(u). This conclusion is premised upon the argument that the premium payments were periodic payments made pursuant to the decree of divorce, and were constructively received by the taxpayer's divorced wife since they were made for her irrevocable benefit. Nevertheless, the Commissioner has taken

---

3. It provided, *inter alia*, that Sara was entitled for her support and maintenance to receive from the taxpayer $100 per week until her death or lawful remarriage, and as security for the payments the taxpayer was required to assign his salary, dividends and bonuses. And,

"Ordered, Adjudged and Decreed, that plaintiff is entitled to have delivered, and defendant is required to deliver, for the purpose of securing and protecting the plaintiff in the payments to be made for her sole support as herein provided, in the event of the death of defendant, and in consideration of her waiving all her right and interest under and pursuant to the Decedent Estate Law [McK. Consol. Laws, c. 13] of the State of New York and/or the State of Pennsylvania or otherwise, in the property, real and personal, of which defendant might die seized or possessed, policies of life insurance aggregating Sixty-five thousand ($65,000) Dollars in face amount to be delivered to the Tradesmens National Bank and Trust Company of Philadelphia to be held by it as custodian for the purpose of carrying out the terms hereof, and plaintiff is entitled to be named in said life insurance policies as irrevocable beneficiary for her life or until her death or lawful remarriage, which-

ever should first occur, in order to provide payment by said insurance company or companies to plaintiff of the avails of either income or principal of said policies, not exceeding Fifty-two hundred ($5200) Dollars per annum, payable at her option in quarterly or more frequent instalments; upon the death or remarriage of plaintiff, the remaining avails of said policies, either income or principal, to be distributed in such manner as the defendant should direct; plaintiff is entitled to have the defendant maintain the premiums on said policies of insurance and to assure and protect her in that regard, is entitled to have defendant execute any instruments necessary to permit the plaintiff to make loans on said policies limiting such loans however to the purpose of paying premiums upon said policies which should not have been paid for twenty days after due date, and directing the said insurance companies to transmit to plaintiff premium notices simultaneously with the transmission thereof to defendant; so long as the plaintiff should have any interest in said policies, defendant not to make or attempt to make any loans upon, or otherwise encumber, any of said policies of life insurance."

4. Note 2, supra.

the position that the extent of the taxpayer's obligation to his divorced spouse is $5200 per annum until her death or remarriage, and that the insurance premiums were not "received" by her because the insurance itself was merely security for the continued performance of the obligation after the taxpayer's death in the manner that the assignment of his salary, for example, is security for the performance of that same obligation during his lifetime. More briefly, the Commissioner's contention is that the payments on account of the insurance were not alimony or in the nature of alimony.

Reliance is placed by the taxpayer on Estate of Hart v. Commissioner, 1948, 11 T.C. 16, and Stewart v. Comm., 1947, 9 T.C. 195. Neither, however presents an analogous issue in the background of the case *sub judice*. We see no need of digressing to a discussion of "constructive receipt", nor do we find it necessary to delineate all the conditions under which payment of insurance premiums by a divorced spouse, pursuant to a decree of divorce or a written instrument incident to a divorce, may be deductible from his gross income.[5]

The contract between the taxpayer and his wife, which formed the basis for the divorce decree, and indeed the decree itself, are legal documents subject to judicial construction. As a whole, they indicate rather clearly that the wife sought to salvage out of the bankrupt marriage $5200 per annum until her death or remarriage, and that she sought to protect herself against possible defalcation both during the taxpayer's life and thereafter. Thus, the instruments, as we have outlined them, create in the first instance the obligation to make payments of $100 per week, and then proceed to establish the means by which the divorced wife is assured of receiving the payments. In the written agreement the basic obligation is created by the first paragraph; the ninth paragraph sets out the security for the continued performance of the obligation during the taxpayer's lifetime, and the tenth

paragraph sets up the device for assuring the same payments after the taxpayer's death. The decree itself recites with respect to the insurance "* * * that plaintiff is entitled to have delivered, and defendant is required to deliver [the insurance policies] for the purpose of securing and protecting the plaintiff in the payments to be made for her sole support as herein provided * * *." And the policies, which were delivered in escrow, carried the provision that the divorced wife shall receive not more than $5200 per annum until her death or remarriage, in which event the balance would be distributed according to the taxpayer's discretion.

We do not understand, therefore, that the security for the faithful performance of the taxpayer's continuing obligation of support, as created by the instruments involved, operate to give his divorced wife more than the $5200 annually reserved to her for the period she is entitled to receive it. That the taxpayer's former wife was made conditionally the irrevocable beneficiary of the life insurance policies does not alter the substantive effect of the agreement and decree. Set in the context of those instruments, that fact *per se* is not convincing that such assignment of the policies and the current payment of premiums discharged the taxpayer's primary obligation to provide for the stipulated payments after his death for the longest period of time rightfully due to his divorced wife. Nor does it establish that the insurance constitutes something other than security for what, by agreement and decree, she is legally entitled to have from the taxpayers' estate in any case.

We recognize, of course, the possibility, if not the high probability, that the divorced wife may be relegated entirely to the insurance on the death of the taxpayer as the sole available source for the satisfaction of her right to the annual $5200, but determination of the tax consequences in such event must wait the actual situation.[6]

---

5. See I.T. 4001, Internal Revenue Bulletin, March 20, 1950, pp. 7–8.

6. Even now there are indications of the tax treatment which may be expected: Estate of Laughlin v. Commissioner, 9 Cir., 1948, 167 F.2d 828; Commissioner v. Converse, 2 Cir., 1947, 163 F.2d 131, 133; Commissioner v. Maresi, 2 Cir., 1946, 156 F.2d 929; see also E.T. 19, 1946-2 Cum.Bull. 166.

For the reasons stated we conclude that the payments made by the taxpayer in the taxable year on account of insurance premiums under the circumstances of this case, are not deductible from his gross income under Section 23(u) of the 'Code. The decision of the Tax Court will, consequently, be affirmed.